IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:13CR19 (JCH) |
| v. | |
| JESSE C. LITVAK, | MAY 26, 2016 |
| Defendant. | |
| _____/ | |

**JESSE C. LITVAK'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE OR ARGUMENT "BLAMING VICTIMS"**

Dane H. Butswinkas (phv07986)
Adam D. Harber (phv07988)
C.J. Mahoney (phv08039)
Katherine A. Trefz (phv08040)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005

-and-

Ross H. Garber (ct17689)
Michael G. Chase (ct28935)
SHIPMAN & GOODWIN LLP
1 Constitution Plaza
Hartford, CT 06103

*Attorneys for Jesse Litvak*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     Mr. Litvak Is Entitled To Impeach the Government's Witnesses on Materiality and To Offer Evidence about how "Reasonable" RMBS Investors Make Decisions. ......................................................................................................................... 2

II.    The Caselaw Cited in the Government's Brief Is Inapposite. ............................................ 4

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. CIV. 3:01CV575 (PCD), 2002 WL 32255352 (D. Conn. Jan. 18, 2002).................................................................5

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ.3288 (DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) ..................................................................................5

*Neder v. United States*, 527 U.S. 1 (1999)....................................................................6

*S.E.C. v. Rorech*, 720 F. Supp. 2d 367 (S.D.N.Y. 2010) ...............................................5

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ..........................................2, 4

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007) ....................................................6

*United States v. Cusimano*, 123 F.3d 83 (2d Cir. 1997) ................................................4

*United States v. Gray*, 367 F.3d 1263 (11th Cir. 2004) .................................................6

*United States v. Isola*, 548 F. App'x 723 (2d Cir. 2013) ..............................................4

*United States v. Kreimer*, 609 F.2d 126 (5th Cir. 1980) ................................................6

*United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015) .................................................4, 5

*United States v. Siegel*, 717 F.2d 9 (2d Cir. 1983)........................................................4

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004) .................................................6

### OTHER AUTHORITIES

National Stolen Property Act ..........................................................................................6

Rule 10b-5..........................................................................................................1, 2, 4, 5

In its Motion *in Limine* To Preclude Evidence or Argument "Blaming Victims," the government essentially demands that Mr. Litvak abandon any materiality defense. Anything short of that would, in the government's view, impermissibly "blame the victim."

Mr. Litvak does not intend to offer evidence at trial to "blame the victim." Nor does he intend to argue that the jury should find him innocent, irrespective of whether the government has met its burden on the elements of the charged counts, simply because his counterparties "fail[ed] to take steps to prevent from being made victims." Dkt. No. 369, at 2 (hereinafter "Mot."). In fact, the evidence at trial likely will show, as it did last time, that Mr. Litvak's purported victims were not babes in the RMBS woods. They are among the world's most sophisticated investors, and their conduct and diligence in the transactions at issue reflected as much.

Mr. Litvak does intend, however, to contest vigorously the government's assertion that the misrepresentations alleged in the indictment were material for purposes of Rule 10b-5. He intends to do so by, *inter alia*, (i) demonstrating to the jury that, to the extent any government witness says he placed any real importance on the purported misrepresentations, he is not a reliable proxy for a "reasonable investor" in the RMBS market; and (ii) impeaching or otherwise rebutting "importance" testimony from such witnesses.

These plainly are legitimate purposes, and the Second Circuit held as much in the appeal in this very case. The government's motion does little more than pay lip service to the Court of Appeals opinion. The Court should deny it.

**I.     Mr. Litvak Is Entitled To Impeach the Government's Witnesses on Materiality and To Offer Evidence About how "Reasonable" RMBS Investors Make Decisions.**

In the Rule 10b-5 context, "[t]he question of materiality, it is universally agreed, is an ***objective one***, involving the significance of an omitted or misrepresented fact to a ***reasonable investor***." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976).[1] The government's entire case on this element at the first trial consisted of eliciting testimony from its witnesses that they considered Mr. Litvak's alleged misrepresentations "important" and then telling the jury in closing that this was sufficient to prove materiality. *See, e.g.*, Ex. 4 to Dkt. No. 360 ("Q. At the time, if you had known that Mr. Litvak bought the bond at 66 and 17 ticks, rather than 66 and 20 ticks, ***would that have mattered to you***?  A. Yes." (Trial Tr. 395:6–9) (Canter)); Ex. 5 to Dkt. No. 360 ("Q. Mr. Norris, if you knew at the time that Mr. Litvak wasn't telling you the truth about that bid, in fact, had send [sic] you an altered document to deceive you, ***would that be important to you***?  A. Yes." (Trial Tr. 877:15–19) (Norris)); *see also* Ex. 8 to Dkt. No. 360 (Trial Tr. 2363:25–2364:6) ("The Government's case established that the lies Mr. Litvak was telling his victims mattered. How do you know?  Well, the witnesses that you heard from, the victims, they came in and ***they each told you those lies mattered.  They said it would have been important*** for them to know the truth and they wouldn't have paid or they would have wanted to get some of that money back for their investors."). In other words, the government's strategy was two pronged—it held up its witnesses as paradigmatic "reasonable investors" and then elicited testimony from them that the alleged lies were "important" (and, hence, material—at least under the prior instruction on this topic).

The only way for a defendant in Mr. Litvak's position meaningfully to contest materiality under these circumstances is either to (i) demonstrate that the government's witnesses are not

---

[1] All emphases are added except where otherwise noted.

2

good proxies for "reasonable" investors, or (ii) question the credibility of their statements about the "importance" of the information conveyed.

The Court allowed evidence directed toward these purposes at the first trial, mostly without objection from the government. For example, the defense questioned Joel Wollman about comments he made to another counterparty that he should "believe as much . . . as you will" about statements Mr. Litvak made about the sale price of a bond. Ex. 1 (Tr. 1027:12-24). More generally, the Court allowed the defense to question the government's witnesses about how they made investment decisions and the relative importance they placed on different kinds of information. Ex. 2 (Tr. 2187:10-2190:22).

Much of the proffered expert testimony the government seeks to exclude in its motion goes to the same points. For example, the government objects to Mr. Burnaman's proffered opinion that reasonable investors in this market "conduct rigorous, independent analysis and due diligence before purchasing non-agency RMBS." Mot. at 2 (quoting Expert Notice at 2–3). If testimony of this kind runs afoul of the supposed prohibition on "blaming the victim," so too would much of the testimony elicited at the last trial about the importance of proprietary modeling and other analytical tools used by reasonable investors in this market.

As it was, each of the counterparty witnesses who testified at the first trial confirmed that he or she undertook a rigorous, independent analysis of the kind Mr. Burnaman describes prior to purchasing or selling RMBS. And to the extent a given counterparty did not, Mr. Litvak's pointing this out to the jury would not be an effort to "blame the victim"—it would go to rebutting the government's assertion that the witness is a proxy for a "reasonable investor." The Second Circuit quite clearly held that Mr. Litvak is entitled to present evidence, including expert testimony, at the retrial to "counter the government's argument that a *reasonable* investor would

3

have found Litvak's statements material." *United States v. Litvak*, 808 F.3d 160, 183 (2d Cir. 2015). The testimony to which the government objects falls squarely into this category.

The government also objects to Mr. Burnaman and other experts offering the opinion that reasonable investors discount the value of unverified information obtained from dealers in negotiations. Mot. at 2. But again, the purpose of such evidence is not to "blame the victim." Rather, such evidence falls squarely within the bounds of what the Second Circuit's opinion permits Mr. Litvak to do: "counter the government's argument that a ***reasonable*** investor would have found Litvak's statements material." *Litvak*, 808 F.3d at 183.

## II.     The Caselaw Cited in the Government's Brief Is Inapposite.

Mr. Litvak disputes that any of the expert testimony he may offer at trial fairly can be described as "blaming the victim." But even if that were the case, the government is wrong to suggest that there is an absolute prohibition on referencing a purported victim's lack of diligence for any purpose. Quite tellingly, ***none*** of the cases cited by the government in its brief arose in the context of a Rule 10b-5 prosecution. And the few cited cases[2] that address materiality (as opposed to intent) do so only in the context of the mail and wire fraud prosecutions, which are governed by a different (and less defendant-friendly) materiality standard.[3]

---

[2] One of these cases, *United States v. Isola*, 548 F. App'x 723 (2d Cir. 2013), was a wire fraud case in which the trial court precluded the defendant from introducing evidence about the victim's negligence. But the Court of Appeals noted (in an unpublished opinion) that the defendant had not argued before the trial court that this evidence was relevant to materiality. The panel therefore reviewed for plain error. *Id.* at 725.

[3] The standards for materiality in the mail/wire fraud and securities contexts differ in important ways. *Compare United States v. Siegel*, 717 F.2d 9, 15 (2d Cir. 1983) (defining materiality under mail fraud as whether a fact "would be important to a reasonable person in deciding to engage in a particular transaction"), *with United States v. Cusimano*, 123 F.3d 83, 88 (2d Cir. 1997) (noting that materiality in securities contexts requires that there is "a substantial likelihood that a reasonable investor would view [information] as significantly altering the 'total mix' of information available" (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). And, for the reasons set forth above, in a securities fraud case like this one, where the

4

This distinction is critical because, in the securities fraud context, "the 'reasonable investor' is equivalent to the market itself." *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ.3288 (DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) (internal quotation marks omitted). Thus, where, as here, "the market" is one dominated by highly sophisticated investors, the jury must view materiality from the perspective of such an investor—not from that of a "reasonable *person*" and certainly not from the perspective of a "gullible" investor, as the government wrongly suggests.[4]  Mot. at 2.  An investor cannot be both "reasonable" and "gullible" at the same time.[5]  *See* Dkt. No. 360.

---

government holds up the purported victims as quintessential "reasonable investors," prohibiting the defendant from challenging that assertion effectively means that the defendant must concede materiality.

[4] *See, e.g.*, *S.E.C. v. Rorech*, 720 F. Supp. 2d 367, 372 (S.D.N.Y. 2010) ("SEC has failed to prove that either piece of alleged information was material" because "these two pieces of information were not considered material to ***reasonable investors in VNU CDSs***," whom the Court noted were "***sophisticated*** high yield bond buyers"); *Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. CIV. 3:01CV575 (PCD), 2002 WL 32255352, at *4 n. 3 (D. Conn. Jan. 18, 2002) ("Plaintiff [in a Rule 10b-5 case] would also appear to face a formidable obstacle in alleging that the misstatement in the IBC press release was material" because "[t]he notion that a ***sophisticated plaintiff*** would rely on a summary of a shareholder agreement appearing within a press release without referring to the document to which it refers is a dubious proposition.")

[5] The evidence at the first trial demonstrated that the RMBS market is comprised of highly sophisticated investors.  That is why the Second Circuit ruled that Mr. Litvak is entitled to offer expert testimony "that misrepresentations by a dealer as to the price paid for certain RMBS would be immaterial to a counterparty that relies not on a 'market' price or the price at which prior trades took place, but instead on its own ***sophisticated*** valuation methods and computer model." *Litvak*, 808 F.3d at 183; *see also id.* (citing securities disclosure cases in which courts "have held repeatedly . . . that ***the sophistication of the investor is relevant*** both to the adequacy of the defendant's disclosure, and to the extent of the investor's reliance on any alleged misrepresentations" (alterations and internal quotation marks omitted)).  The government ignores both the record from the first trial and the Court of Appeals opinion in its motion when it suggests that the jury should assess materiality from the perspective of a "gullible" investor—the securities law equivalent of the plaintiff with the eggshell skull—rather than from the perspective of the savvy financiers who dominate the RMBS market.  Mot. at 2.

5

As indicated, however, most of the cases the government cites say nothing about so-called "blame the victim" evidence in conjunction with a discussion of materiality. Most stand for the unremarkable proposition that "[t]he victim's negligence is not a defense to criminal conduct." *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980). Fair enough. But that does not mean that a defendant cannot probe the conduct of purported victims in a securities fraud case for other purposes. Other cited cases note that "justifiable reliance" is not an *element* of a criminal fraud offense. *E.g.*, *Neder v. United States*, 527 U.S. 1, 24–25 (1999); *see also United States v. Gray*, 367 F.3d 1263, 1269-71 (11th Cir. 2004). Mr. Litvak does not argue otherwise. But whether "reasonable investors" in the RMBS space would have relied on the statements of the kind at issue in this case remains relevant to the element of materiality.

Finally, the government cites cases that assess the relevance of a purported victim's negligence to the element of intent, namely *United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004). *Thomas* was a National Stolen Property Act case in which the Court of Appeals rejected the argument that "the foolishness of [the victim's] belief in [the defendant's] fraudulent scheme somehow vitiates [the defendant's] fraudulent *intent*." *Id.* at 243. The Second Circuit did not lay down an absolute prohibition on presenting such evidence for other purposes. *Thomas* and other cases addressing this point are thus inapposite. *See also United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("[A] victim's lack of sophistication is not relevant to the *intent element* of mail or wire fraud.").

\* \* \*

The government pays lip service to the Second Circuit's holding in the introduction of its motion but then seems to forget about it. And, at bottom, this motion *in limine* (as well as others it has filed) seems driven by a desire to relitigate the issues it lost on appeal and to deny Mr.

6

Litvak a full and fair opportunity to present a defense on materiality.  Mr. Litvak urges the Court to recognize as much and to deny the government's motion.

Respectfully Submitted,

Dated:  May 26, 2016                               /s/ C.J. Mahoney
Ross H. Garber (ct17689)
Michael G. Chase (ct28935)
SHIPMAN & GOODWIN LLP
1 Constitution Plaza
Hartford, CT 06103
Tel:  (860) 251-5000
Fax:  (860) 251-5099
rgarber@goodwin.com
mchase@goodwin.com

Dane H. Butswinkas (phv07986)
Adam D. Harber (phv07988)
C.J. Mahoney (phv08039)
Katherine A. Trefz (phv08040)
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
aharber@wc.com
cmahoney@wc.com
ktrefz@wc.com

*Attorneys for Jesse Litvak*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2016, a copy of the foregoing motion was uploaded to and filed with the CM/ECF System for the United States District Court for the District of Connecticut, with a courtesy copy delivered via e-mail to the following counsel:

Jonathan Francis
Heather L. Cherry
William Nardini
Assistant U.S. Attorney
U.S. Department of Justice
District of Connecticut
Connecticut Financial Center
157 Church Street, Floor 25
New Haven, CT 06510

/s/ C.J. Mahoney