UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | November 18, 2016 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL DISCLOSUREOF COMMUNICATIONS
REGARDING WILLIAM JENNINGS' SEPARATION FROM JEFFERIES**

Defendant Jesse C. Litvak has filed a motion to compel and accompanying memorandum [Dkt. #442 & 442-1] seeking additional disclosures from the Government regarding William Jennings' separation from Jefferies in January 2014. That motion implies that the Government violated *Brady* or *Giglio* by failing to disclose information concerning the terms of Jennings' separation prior to the first trial, and further speculates that the Government is now refusing to disclose additional *Brady* or *Giglio* information on the topic. Neither of these assertions is true; the Government knew nothing about the terms of Jennings' deal with Jefferies before the first trial, and has now disclosed all the information it has on the subject. As with Litvak's prior claims regarding asserted *Brady* violations,[1] the Court should deny the motion in its entirety.

---

[1] In July 2013, the defense accused the Government of committing a constitutional violation by coercing his former employer, Jefferies & Co., Inc. ("Jefferies"), not to advance Litvak's legal fees [Dkt. #50]. Then in August 2013, in its reply in support of that motion, the defense accused the Government's counsel of failing to review the files of the prosecution team for *Brady* materials [Dkt. #55]. Then in September 2013, the defense accused Government's counsel of violating the Court's Standing Order, Rule 16 and the Constitution by not searching the files of the Department of the Treasury and of the Special Inspector General for the Troubled Asset Relief Program for materials of potential interest to the defense [Dkt. #65]. Then in October 2013, in its reply in support of that motion, the defense accused the Government's counsel of committing another *Brady* violation by producing interview reports more than four months before trial [Dkt. #83]. Most recently, in May 2016, the defense argued that the Government must identify *Brady/Giglio* material in the millions of pages of documents it had offered to produce at the defense's request.

## BACKGROUND

Litvak's motion concerns the Government's January 29, 2014 Non-Prosecution Agreement ("NPA") with Jefferies [Ex.1 to Def's Mem., Dkt. 442-2] and the effect it had on Jennings' resignation from Jefferies in late January 2014 on very favorable terms, including a $10 million payment.

The Government and Jefferies began discussing potential resolution of Jefferies' corporate criminal liability on October 2, 2013, which culminated in the NPA. During the course of negotiating the NPA, the Government made clear that it would not agree to any resolution that did not repair the business culture in Jefferies' Mortgage and Asset-Backed Securities Trading group. In this respect, the parties discussed the possibility of putting in place a monitor or compliance consultant, which eventually happened. NPA at 11-12 (Appx. B). Based on its investigation, the Government believed that work of a monitor or consultant would be impeded if Jefferies' employees did not face "discipline and termination" for their conduct. NPA at 1, 11-12. In particular, the Government orally communicated that it would be impossible to reform Jefferies' culture if Jennings continued as its co-Head of Fixed Income. On December 20, 2013, Jefferies notified the Government that it had decided to separate from Jennings and accept the Government's offer to enter into an NPA which included a $25 million penalty, complete remediation for victims and a compliance consultant. The Government and Jefferies then began negotiating the actual NPA, which was complete on January 28 and executed on January 29, 2014.[2]

---

[2] The Government had planned to notify the Court and defense of the NPA once its terms had been finalized, but not publicly disclose it until after the trial. However, Jefferies informed the Government that it believed itself to be required to file a disclosure of the NPA's financial terms on January 28, 2014, even though the NPA document was still under negotiation at the time. Accordingly, the Government immediately provided the Court and defense with the then-current

Thus, going into the first trial, the Government's only information concerning Jennings was that he no longer worked at Jefferies. While Jennings' conduct was certainly a topic at trial, Litvak's motion is incorrect to describe Jennings as "a potential witness in the first trial." Jennings was not on the defense's December 24, 2013 first witness list or its January 17, 2014 updated list. Likewise, Jennings was not on the Government's December 31, 2013 witness list, which designated "will call" and "may call" witnesses.[3] Thus, as trial approached, neither party evinced any intention to call Jennings as a witness—and for obvious reason, since (as came out during the first trial) Jennings had worked with Litvak to defraud AllianceBernstein and the Government had sought Litvak's cooperation in building a case against him. Trial Tr. at 48:23 & 1875:6; 1555:12-25.

Although the jury convicted Litvak on March 7, 2014, the Government's investigation continued. Jefferies continued producing documents, which the Government disclosed to the defense, with one relevant exception. Between March 31 and April 2, 2014, Jefferies produced documents bearing Bates stamps JEFF SGTP 376047–377951. The vast majority of these 1,905 pages consisted of settlement agreements between Jefferies and Litvak's victims, Litvak's expense reports and his Outlook calendar. Eighteen pages, however, concerned Jennings' resignation and consisted of his January 27, 2014 separation agreement with Jefferies (JEFF SGTP 377934–377945, Ex. 4 to Def's Mem. [Dkt 442-5] & DX2162), a FINRA form U-5 concerning Jennings filed by Jefferies on February 19, 2014 (JEFF SGTP 377947–377950, DX2164) and a January 27, 2014 internal Jefferies email announcing Jennings' departure (JEFF

---

draft NPA on January 26, 2014 (and later the executed version). The information disclosed in Jefferies' filing was reported in the financial press beginning on January 29, 2014. The Government waited until after trial to publicly release and comment on the NPA.

[3] Prior versions of the Government's witness list were extremely conservative and included 71 individuals, including Jennings and nearly every other relevant Jefferies employee.

SGTP 377951, DX2165). Prior to that production, the Government was not aware of the terms of Jennings' departure from Jefferies. The Government did not re-number any documents before producing them to the defense, and so there was an 18-page gap in its production between 377933 and 377752. As the Government has already informed the defense, it does not know and has no record of why these 18 pages were not disclosed along with the other 1,887 pages. Ex. 7 to Def's Mem. [Dkt. #442-8].

The U-5 concerning Jennings produced by Jefferies on April 2, 2014 was the topic of further communication between the Government and Jefferies' counsel. Specifically, the Government questioned Jefferies responses to question 7F of the U-5, which reported that there had not been allegations made against Jennings. The Government Jefferies' counsel to fix this error, and Jefferies agreed. On May 8, 2014, Jefferies' counsel sent the Government the text that it intended to use in an amended U-5 to explain the allegations against Jennings. The Government noted that the proposed text was also not completely accurate. Jefferies made corrections and its counsel shared the revised text with the Government on May 16, 2014. The Government responded that it had no objections on May 19, 2014.[4] The Government believes that Jefferies filed an amended version of Jennings' U-5 around that same date.

The Government continued disclosing the documents it received from Jefferies until October 7, 2014, up to Bates number JEFF SGTP 378113. Although the defense apparently independently received Jennings' separation agreement from the SEC in September 2014 (Def's Mem. at 6), the 18-page gap in the Government's production went unnoticed by the parties until September 6, 2016, when the defense flagged the missing documents. Ex. 5 to Def's Mem. [Dkt.

---

[4] Although not discoverable, the Government has produced the relevant correspondence with Jefferies' counsel.

#442-6]. Since the case was remanded for retrial, the Government has voluntarily produced hundreds of thousands (if not millions) of additional pages of documents concerning investigations into other broker-dealers, which documents have included interview reports, agent notes and document productions. Given this extraordinary level of voluntary disclosure, the Government certainly was not aware that there were any gaps in its productions of Jefferies' documents, and rectified the oversight that same day. Ex. 6 to Def's Mem. Further, to ensure that there are no other missing documents, the Government has reviewed its productions and also invited the defense to point out any problems; to date, the Government is not aware of any other gaps.

**ARGUMENT**

Litvak's motion argues that any information that the Government has concerning Jennings' separation from Jefferies must be disclosed under *Brady* and *Giglio*. Def's Mem. at 10-12. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (extending *Brady* to "nondisclosure of evidence affecting credibility" of a government witness). While the Government has voluntarily disclosed a significant amount of documents and information beyond its obligations, *Brady* and *Giglio* mandate disclosure only of "material" information, which in this context means "evidence that, if disclosed, would have had a reasonable probability of changing the outcome of the proceedings." *In re United States (Coppa)*, 267 F.3d 132, 144 (2d Cir. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 681-82 (1985)). Information does not fall under the rubric of *Brady* or *Giglio* simply because it might be "material to preparing the defense"; that broader category is covered by Federal Rule of Criminal Procedure 16, which

- 5 -

itself is limited to pre-trial production of tangible documents.  Fed. R. Crim. P. 16(a)(1)(E)(i); Standing Order on Discovery (A)(5).

## I. THE GOVERNMENT HAS MET ITS *BRADY* AND *GIGLIO* OBLIGATIONS

### A. Before Litvak's First Trial

The defense's suggestion notwithstanding (Def's Mem. at 1-2, 10-11), prior to the first trial, the only information that the Government had about Jennings' employment at Jefferies was that it had ended.  To be clear, the Government did not know before trial that Jefferies had agreed to pay Jennings millions of dollars as part of his resignation.  Obviously, the Government could not have disclosed information it did not have.

In any event, the Government had no obligation to disclose that Jefferies had decided to end Jennings' employment.  First, that information was not within the scope of *Brady*; if anything, the fact that Jefferies was no longer willing to employ one of Litvak's supervisors (which was all that the Government knew at the time) would have tended to undercut the argument that Jefferies had approved of Litvak's misrepresentations.  Second, although Jennings was not on the Government's witness list, even if he had been, the fact that Jefferies had decided to force him out so that it could enter into an NPA would not have been within the scope of *Giglio*; indeed, rather than providing Jennings with a benefit, to the Government's knowledge at the time, its position on the NPA had worked to Jennings' detriment.  Third, prior to trial, the Government did not have the relevant 18 pages (Jennings' separation agreement, his U-5, and Jefferies' farewell email), and thus could not have been required to produce them under Rule 16.

Thus, there was no discovery violation before the first trial.[5]

---

[5] Litvak's motion does not argue that the Government committed a post-trial *Brady* violation. Nor is it obvious what bearing the financial terms of Jennings' January 2014 resignation, the specifics of his February 2014 U-5, or the content of Jefferies' January 2014 farewell email

### B. Before Litvak's Second Trial

Litvak's motion speculates that the Government now has additional information concerning the terms of Jennings' separation from Jefferies—specifically, Jefferies' $10 million payment to Jennings—and argues that such information must be disclosed under *Giglio* or *Brady*. Def's Mem. at 10-12. The Government has no such information, and if it did, it would not be discoverable.

First, notwithstanding the defense's conjecture about what the Government "must" or "should" or "probably" knows, it has no additional information about the "potential terms of separation" that might have been under consideration by Jefferies, much less about Jefferies' ultimate decision to make a $10 million payment to Jennings. The Government has reviewed its own files for discoverable information or documents concerning the terms of Jennings' separation, but has not located any.

Second, any information about Jennings' resignation—even if it were within the possession of the Government—would not be covered by *Giglio* because he will not be a Government witness. Rather, Jennings is on Litvak's witness list. The Government has not found a single case where the Second Circuit has held that *Giglio* requires the Government to produce information bearing on the credibility of defense witnesses. *See also United States v. Johnson*, 581 F.3d 320, 331 (6th Cir. 2009) (the government did not violate *Brady* by not informing the defense of evidence which called into question defense witness's credibility); *United States v. Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) (Government's failure to disclose alleged prior misconduct by federal agent testifying for defendants not *Giglio*); *United States v.*

---

could have had on the Court's determination of post-trial motions or an appropriate sentence for Litvak, much less how such information could have been so important as to have had a reasonable probability of changing the outcome.

*Bodkins*, 274 F. App'x 294, 301 (4th Cir. 2008) ("[Defendant], however, argues that it is inconsequential whether [his co-defendant] was a government witness or a witness testifying on his own behalf.  Nevertheless, he has not set forth and we have not found any controlling authority to sustain his contention.").

Third, even if the Government had additional information about Jefferies' payment to Jennings (which it does not), it is doubtful that such information could be of such exculpatory value as to be "material" within the meaning of *Brady*—meaning reasonably likely to change the outcome of the trial.  Although knowing why Jefferies decided to pay Jennings or the details of any negotiations between Jennings and Jefferies might be useful to Litvak's trial strategy (Def's Mem. at 10-12), that does not mean this information would be "material" within the meaning of *Brady*.  At best, Litvak might argue that documents concerning Jefferies' $10 million payment are "material to preparing the defense" under Rule 16.  Litvak has not made this argument, and since the Government has no such documents, it has nothing to disclose.

- 9 -

## CONCLUSION

For these reasons, the Government respectfully requests that Litvak's motion be denied.

        Respectfully submitted,

        DEIRDRE M. DALY
        UNITED STATES ATTORNEY

        _____/s/_____
        JONATHAN N. FRANCIS
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. phv05083
        jonathan.francis@usdoj.gov
        WILLIAM J. NARDINI
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar. No. ct16012
        william.nardini@usdoj.gov
        HEATHER L. CHERRY
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. phv07037
        heather.cherry@usdoj.gov
        157 Church Street, 25th Floor
        New Haven, CT  06510
        Tel.: (203) 821-3700

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                                                                            /s/
                                                            JONATHAN N. FRANCIS
                                                            ASSISTANT UNITED STATES ATTORNEY