UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13CR19(JCH) |
| | : | |
| v. | : | |
| | : | |
| JESSE C. LITVAK | : | December 5, 2016 |

**<u>GOVERNMENT'S REVISED PROFFER OF SCHEME EVIDENCE</u>**

At the Court's request, the Government respectfully submits the attached revised Proffer of Scheme Evidence regarding uncharged trades that the Government intends to offer as evidence in its case-in-chief.

The Government has identified 17 transactions—in addition to those charged in the Indictment—that it may offer in its case-in-chief to prove the fraudulent scheme alleged in the Indictment. Most of these trades were part of the fraud scheme evidence admitted at the first trial. The following chart lists these 17 transactions, specifies the pertinent exhibits number, summarizes each trade, highlights certain portions that the Government may use to establish the charged scheme, and notes the applicable rules governing admissibility.

The Government respectfully reserves the right to use additional uncharged transactions to respond to or rebut arguments raised by the defense at trial.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov
HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv07037
heather.cherry@usdoj.gov
WILLIAM J. NARDINI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct16012
william.nardini@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 1. | 1 | 4/12/11 | The Government expects Michael Canter of AllianceBernstein ("AB") to testify that he received GX1, which included a spreadsheet with an inadvertently-included tab.  After reading that spreadsheet, specifically the portion dealing with the April 12, 2011 bid list in which AB purchased GPMF 2006-OH1 A1 through Jefferies, Canter realized that Litvak had lied to him about Jefferies' purchase price. | GX1 - FRE 801(d)(2(A) (defendant's admissions); FRE 801(d)(2)(E) (co-conspirator's statements); FRE 803(6) (business record) |
| 2. | 403A - 405 | 4/1/10 | Jefferies purchased the RALI 2007-QH1 A1 bond at a price of 56.  Litvak misrepresented to AB that "he will sell me bonds at 56-24 [56.75] . . . . I would work for 2-4/32s [2 to 4 ticks] on these with you."  Jefferies actually made 28 ticks due to Litvak's lie, a difference of at least 24 ticks worth approximately $147,496.44.<br><br>This trade occurs the day after the transactions charged in Counts 1 and 2, and the defendant compared the "rali bonds" to the "lxs bond" that he sold to AB the day before allegedly using fraudulent misrepresentations.  Specifically, Litvak told AB that "I think that lxs bond was a great buy."  Litvak's alleged fraud caused AB a loss of approximately $602,396.92 on that 3/31/10 trade of the "lxs bond."<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX403A & B - FRE 803(6) (trade ticket is a business record)<br>GX404-05 - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 3. | 406A - 407 | 5/4/10 | Jefferies purchased the WAMU 2006-AR14 1A1 bond at a price of 88-24 [88.75]. Litvak misrepresented to AB that "he will sell me 30mm orig[inal face value] at 89.50 bro." Although Litvak offered "i will work for whatever you want on this one" and AB told him to "tack on 4 ticks [4/32s]," Jefferies actually made 28 ticks due to Litvak's lie, a 24-tick difference worth approximately $69,991.26.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX406A & B - FRE 803(6) (trade ticket is a business record)<br>GX407 - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is lying |
| 4. | 410A - 411B | 9/14/10 | In a "bid list" or auction trade, AB instructed Litvak to bid 66-20 [66.625] for the HVMLT 2007-7 2A1A bond, and "add 4 tics." Litvak actually bid the seller 66-17 [66.53125] and secretly kept the extra 3 ticks for Jefferies, a difference worth approximately $3,120.53.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims. This trade particularly demonstrates the materiality of the price information Litvak misrepresented, even when only a relatively small amount of money was at stake. | GX410A & B - FRE 803(6) (trade ticket is a business record)<br>GX411B - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 5. | 412A - 415B | 1/12/11 | At 11:29:46 a.m., Litvak attempted to interest AB in purchasing the HVMLT 2007-7 2A1A bond, which Jefferies had an order to sell. At 11:54:43 a.m., Litvak reported to Jefferies salesperson Beth Starr "i just bot that bond at 74-16 [74.50]," and instructed her to get AB to pay 75. Starr attempted to do so, misrepresenting to AB that a third party seller still owned the bond. At 12:13:28, Starr reported to Litvak that AB was offering 74.5 [74-16], and that she was "going to tell him [AB] the guy will sell to us at 74-28 best." At 12:24:32, Litvak replied "ok." At 12:28:33, Litvak personally misrepresented to AB that "i would have to buy bonds at 74-28 . . . . .i would work for 2/32s if you wanted." AB replied "ok. let's buy em. 4 tics is fine." Due to Litvak's lie, Jefferies actually kept 16 ticks, a 12-tick difference worth approximately $11,263.14.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims. This trade particularly demonstrates the materiality of the price information Litvak misrepresented. | GX412A & B - FRE 803(6) (trade ticket is a business record)<br>GX413 & 413B- not offered for the truth, but for Litvak's awareness as of 10:24 a.m. that he could buy the bond for 74-16<br>GX414 - 415B – FRE 801(d)(2)(A) (defendant's admissions); FRE 801(d)(2)(E) (co-conspirator's statements); not for truth because defendant and Starr are lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 6. | 416A - 417B | 6/23/09 | Litvak purchased the WAMU 2006-AR7 1A bond at 38. Afterwards, he misrepresented to the hedge fund Magnetar that the seller still owned the bonds and that "he is 38-16 [38.50] to us . . . .will work for whatever you feel comfy with . . . .6/32s?" When Magnetar negotiated for a lower price, Litvak misrepresented that the non-existent seller "is willing to sell em to me at 38-14." Magnetar responded to Litvak's request to "pay me 4/32s off that level" with the question, "will that work for you?" Litvak responded "im easy bro . . .life is too short." Magnetar offered "then i'll pay you 38-20 and you will give me heads up next time before you show the bonds to your other guys."<br><br>Magnetar agreed to pay compensation of 6 ticks for a bond that it thought Jefferies did not own. In reality, Jefferies had already purchased the bond and kept 20 ticks, a 14-tick difference worth approximately $44,537.39.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims. This trade particularly demonstrates the materiality of the price and seller information Litvak misrepresented. | GX416A & B - FRE 803(6) (trade ticket is a business record)<br>GX417A & B - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 7. | 418A - 420B | 1/11/11 | At 2:47:22 p.m., Litvak learned that he could purchase the HVMLT 2004-9 4A3 bond from a seller at 60-16 [60.50]. Litvak immediately misrepresented to Magnetar that "they are offering me bonds at 61." Magnetar asked Litvak "Can you get me done at 61? or do i have to pay you on top?" Litvak misrepresented that Jefferies was paying "4/32s cheap to 61," *i.e.*, 60-28 [60.875]. Litvak continued "so you can have em at 61 and if you are feeling the love anything above that would be great." Magnetar replied "61-04 is cool."<br><br>Instead of the 8 ticks that Magnetar agreed to, Jefferies actually kept 20 ticks, a 12-tick difference worth more than $30,000.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX418A & B - FRE 803(6) (trade ticket is a business record)<br>GX419B - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is lying<br>GX420B - FRE 801(d)(2)(E) (co-conspirator's statement); not offered for the truth, but for Litvak's awareness as of 2:47:22 p.m. that he could buy the bond for 60-16 |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 8. | 421A - 422C | 1/6/11 | In negotiating with hedge fund QVT over the CWALT 2007-OH3 A3 bond, Litvak wrote "full disclosure . . .i, gonna try and buy em obv as low as i can . . . im gonna just go buy them as cheap as i can and will protect you on half the bonds . . .will ping you with color when i buy em." Litvak then misrepresented to QVT that "im buying bonds at 25-8 [25.25] from him." QVT inquired "so how cheap can I buy?" and Litvak responded "i will leave that up to you big man . . ..u know me. im easy[ . . .] 25-12 [25.375]?"<br><br>Jefferies actually purchased the bond at 24-28 [24.875]. Instead of the 4 ticks that QVT agreed to pay, Jefferies kept 16 ticks, a 12-tick difference worth approximately $71,940.05.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX421A & B, 422A - FRE 803(6) (trade ticket is a business record)<br>   GX422B & 422C - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 9. | 423A - 424F | 3/26/10 | In negotiating the purchase of the BSARM 2007-4 22A1 bond from Black Rock and its simultaneous sale to Angelo Gordon, Litvak made misrepresentations to both the seller and the buyer.<br><br>    At 11:49:59, Litvak wrote to the seller, Black Rock, "77-8 [77.25] bid..he is gonn a pay me 4/32s on top of that......lets print this bad boy." At 11:51:30, Black Rock responded "done."  At 11:51:44, Litvak misrepresented to Angelo Gordon that "we be good brotha.  bot em at 77-12 [77.375]."  Angelo Gordon responded "77-20 [77.625].  thnx."<br><br>    Jefferies purchased this bond at 77-08 (not 77-12, as Litvak told Angelo Gordon) and sold it at 77-20 (not 77-12, as Litvak told Black Rock).  Litvak's 4-tick misrepresentation to Angelo Gordon was worth approximately $4,272.52, and his 8-tick misrepresentation to Black Rock was worth approximately $8,545.04.<br><br>    These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims.  This trade particularly demonstrates the materiality of the price information Litvak misrepresented, even when only a relatively small amount of money was at stake. | GX423A & B - FRE 803(6) (trade ticket is a business record)<br>    GX424D-F - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 10. | 425A - 426D | 5/3/10 | On 4/29/10, Jefferies purchased the BSARM 2007-4 22A1 bond at a price of 74. On 5/3/10, Litvak misrepresented to Angelo Gordon "some guy showing me 755k [original face value] and offering me bonds at 77.50." Angelo Gordon responded, "buy em, up 8 to me. wherever u get em." After further misrepresentations about his negotiations with the non-existent seller, Litvak misrepresented "i fok'd [fill-or-killed, or made a take it or leave it bid to] him at 76 and waiting to hear back." Litvak then wrote "were goo d bro . . . 76-8 ok?"<br><br>The 8 ticks of compensation Angelo Gordon agreed to pay "on top" of Jefferies alleged purchase price was worth approximately $1,496.37.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims. This trade demonstrates the materiality of the price information Litvak misrepresented, even when only a relatively small amount of money was at stake. It also particularly demonstrates the materiality of the seller information misrepresented by Litvak, in that that customers would not willingly pay compensation "on top" for bonds bought from Jefferies' inventory. | GX425A & B - FRE 803(6) (trade ticket is a business record)<br>GX426C & D - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 11. | 427A - 428B | 2/17/09 | In negotiating the sale of the BAFC 2006-G 2A5 bond, Litvak wrote to Soros Fund Management ("Soros") that he "told him [the seller] not to get too cute . . . .believe me . . .im work for u bro." Litvak then misrepresented "28-16 [28.50] and they are yours, . . . .and that is with me makin 8 ticks . . . .full disclosure . . . . thats how i roll."<br><br>Jefferies actually purchased the bond at 27-16 [27.50], or 24 ticks less than what Litvak misrepresented to Soros, a difference worth approximately $398,026.21.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX427A & B - FRE 803(6) (trade ticket is a business record)<br>    GX428A & B - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 12. | 429A - 430 | 2/24/09 | Jefferies purchased the LUM 2006-6 A1 bond at a price of 39. Litvak informed Beth Starr, then directed her to make a misrepresentation to Duquesne Capital Management ("Duquesne"): "just tell him that we pay 39-16 [39.50] and get him to try and pay us a little . . . if not . . . we will work for free :)" Starr did as Litvak instructed, writing to Duquesne "we (Jef) can buy the bonds at 39-16. What do you want to pay us on top?" Duquesne purchased the bond at 39-16.<br><br>Although Jefferies agreed that Duquesne would not pay any compensation, Jefferies actually kept 16 ticks, worth approximately $124,463.48.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX429A & B - FRE 803(6) (trade ticket is a business record)<br>GX430 - FRE 801(d)(2)(A) (defendant's admissions); FRE 801(d)(2)(E) (co-conspirator's statement); not for truth because defendant is offering instruction; not for truth because Starr is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 13. | 431A - 432F | 5/19/09 | At 2:49 p.m., Ivy Square bid 70 through Jefferies to purchase the MHL 2004-1 A1 bond off a bid list. At 3:51 p.m., Litvak learned that Jefferies had purchased the bond at 69-01 [69.03125]. At 3:52 p.m., Litvak lied to Nicholas Emmanuel, the Jefferies salesperson covering Ivy Square, writing "we buy at 70 (i bot at 69-16 [69.50] . . .)." Emmanuel responded, "let me see if I can get something from them" and asked Litvak, "No way for them to know where we bid, right[?]" Litvak responded, "no shot what-so-ever that they will know where we bot." Emmanuel later wrote to Litvak that he had "told them we bought at 70 . . ..asking if we know what cover [second best price offered] was . . .how should I handle?" Litvak responded with the misrepresentation, "cover was 69-08 [69.25]."<br><br>Ivy Square agreed to buy the bonds at 70-8 [70.25]. Instead of the 8 ticks that Ivy Square agreed to pay, Jefferies kept 39 ticks, a difference worth approximately $71,461.11.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. In particular, Litvak's instructions and admissions to Emmanuel demonstrate his fraudulent intent, insofar as it establishes his awareness of the opportunity for fraud based on the fact that there is "no shot what-so-ever" that the buyer will know if they are lied to. | GX431A & B - FRE 803(6) (trade ticket is a business record)<br>GX432A-F - FRE 801(d)(2)(A) (defendant's admissions); FRE 801(d)(2)(E) (co-conspirator's statement); not for truth because defendant is offering instruction; not for truth because Litvak is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 14. | 433B - 434B | 6/3/11 | In selling the BSMF 2007-AR4 2A1 bond to Monarch Alternative Capital ("Monarch"), Litvak stated that "i just bot these h61s [high 61]." Four minutes later, Litvak wrote to a trader at J.P. Morgan Securities, "I bot bsmf. Called [Monarch] and just sold it to them. . . . I paid 61. Sold em at 62. . . . told them i paid h61s." The trader at J.P. Morgan responded "haha. f that guy."<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the materiality of the price information he misrepresented. In particular, Litvak's admissions demonstrate his fraudulent intent and materiality, insofar as he bragged about fooling Monarch and lying about price information that he knew would be important to Monarch. | GX433B & 434B - FRE 801(d)(2)(A) (defendant's admissions); not for truth because Litvak is lying |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 15. | 435A - 436B | 10/24/11 | In selling the WFMBS 2006-AR8 3A1 bond to AIG, Litvak stated to Kevin Blaney, a Jefferies salesperson, that the seller "came down to 77-16 [77.50]." Litvak noted that "would love to make 1 pt," then asked Blaney to communicate with AIG: "wanna go back to him at 78-20 [78.625]? (tell him he would sell to us bonds 78-16 [78.50])." Jefferies sold the bond to AIG at the price of 78-16 [78.50], and later confirmed to Blaney "bot em at 77-8 [77.25]."<br><br>The lie that Litvak asked Blaney to tell to AIG was worth at least 32 ticks or one point, which in this trade was approximately $298,396.38.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. In particular, Litvak's instructions and admissions demonstrate his fraudulent intent and materiality, insofar as he sought to "make 1 pt" by having Blaney misrepresent Jefferies' acquisition price to AIG. | GX435A & B - FRE 803(6) (trade ticket is a business record)<br>GX436A & B - FRE 801(d)(2)(A) (defendant's admissions); not for truth because defendant is offering instruction |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 16. | 437A-439 | 6/25/10 | Litvak agreed that Jefferies would purchase the CWALT 2005-J12 2A1 bond from WAMCO at 52-20 [52.625] and sell it to Wellington at 53-08 [53.25]. Litvak then asked a trader at JP Morgan to "clear" a piece of the bond, writing "u buy from from wammy at 52-20 and i buy from u at 52-22. i told them i sold bonds at 52-24." Litvak later sent a potion of his chat with the JP Morgan trader to his junior trader, with the admission "i told them i sold bonds at 52-24" edited out.<br><br>Due to Litvak's lie WAMCO thought Jefferies was making 4 ticks, rather than 20, a difference worth approximately $55,881.72.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, the materiality of the price information he misrepresented, and the false relationship of trust that he created with his victims. | GX437A-C - FRE 803(6) (trade ticket is a business record)<br>GX438 & 439 - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is offering instruction |

| No. | Gov't Exhibits | Transaction Date | Relevance | Bases for Admission |
|---|---|---|---|---|
| 17. | 440A-443 | 6/29/10 | Dismissed Count 16.<br><br>Invesco bid 80 for the FHASI 2007-AR1 1A1 bond off a bid list shown by Jefferies. Litvak bid the seller 79-24 [79.75], which was the winning bid. In selling the bond to Invesco at 80, Litvak misrepresented "i bid…79-26 [79.8125]." To conceal this 2-tick difference in the purchase price, Litvak sent Invesco an altered version of the email he had sent to the seller, with Jefferies' actual bid of "79-24" changed to "79-26."<br><br>Litvak's lie allowed Jefferies to keep 8 ticks instead of 6 ticks, a difference worth approximately $276.38.<br><br>These exhibits tend to establish the modus operandi of Litvak's scheme, his financial motive to lie, his intent to deceive, and the false relationship of trust that he created with his victims. This trade demonstrates the materiality of the price information Litvak misrepresented, even when only a relatively small amount of money was at stake. | GX440A & B - FRE 803(6) (trade ticket is a business record)<br>GX441C & D, 442D-F & 443 - FRE 801(d)(2(A) (defendant's admissions); not for truth because defendant is offering instruction; not for truth because Litvak is lying |

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 5, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

                                                                                                                           /s/  
                                                     JONATHAN N. FRANCIS  
                                                     ASSISTANT UNITED STATES ATTORNEY